UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ELAINE FAYE MATSON,<br><br>                  Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of the Social Security Administration,<br><br>                  Defendant. | CASE NO. 11cv5095-RJB-JRC<br><br>REPORT AND<br>RECOMMENDATION ON<br>PLAINTIFF'S COMPLAINT<br><br>NOTED FOR: February 3, 2012 |

This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261, 271-72 (1976). This matter has been fully briefed. (<u>See</u> ECF Nos.16, 17, 20).

The ALJ failed to evaluate properly the medical evidence provided by one of plaintiff's treating physicians. The ALJ also committed legal error when he determined that plaintiff's fibromyalgia was not a medically determinable impairment and was not

severe. He also failed to discuss the significant probative evidence of plaintiff's chronic pain syndrome. For these reasons and based on the relevant record, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings.

## BACKGROUND

Plaintiff, ELAINE FAYE MATSON, was born in 1949 and was fifty-eight years old on her alleged date of disability onset of August 2, 2007 (Tr. 87). Plaintiff worked as an ophthalmic technician from 1987 until August 2, 2007 (Tr. 105). She stopped working because she alleged that she no longer could perform her job duties (Tr. 104). She alleged that she had extreme pain in moving her arms, head and neck "or any type of movement that I do during the day" (id.). She alleged that because of her impairments she gave up her supervisory duties and cut her hours at work, to see if she could continue working on that basis (see Tr. 27-28). She testified that she worked "until I just couldn't tolerate it," then she "just ended it" (Tr. 28).

## PROCEDURAL HISTORY

Plaintiff filed an application for Title II Disability Benefits on August 7, 2007 alleging disability since August 2, 2007 (see Tr. 87-89). Her application was denied initially and following reconsideration (Tr. 40-44, 53-54). Plaintiff's requested hearing was held before Administrative Law Judge Verrell Dethloff ("the ALJ") on August 28, 2009 (Tr. 19-39). On September 25, 2009, the ALJ issued a written decision in which he found that plaintiff was not disabled pursuant to the Social Security Act (Tr. 7-18).

On January 24, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-4). See 20 C.F.R. § 404.981. On February 2, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision (see ECF No. 1). On April 12, 2011, defendant filed the sealed administrative transcript for this matter ("Tr."). In her Opening Brief, plaintiff challenges, among other findings, the ALJ's (1) finding at step two that plaintiff's fibromyalgia and chronic pain syndrome were not severe impairments; (2) assessment of the medical evidence provided by a treating physician; (3) assessment of plaintiff's credibility; (4) assessment of plaintiff's residual functional capacity; and, (5) finding that plaintiff could perform her past relevant work (see Opening Brief, ECF No. 16). Plaintiff also contends that the new evidence submitted to the Appeals Council supports reversal of the denial of benefits (id., pp. 21-24).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); see also Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot,

considering the plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing* Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting* Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see also Richardson v. Perales, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Sandgathe v. Chater, 108 F.3d 978, 980 (1996) (per curiam) (*quoting* Andrews, supra, 53 F.3d at 1039). In addition, the Court "'must independently determine whether the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" See Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing* Moore v. Comm'r of the Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings

offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of SSA, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing* SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) (other citation omitted)); see also Stout v. Commissioner of Soc. Sec., 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." Stout, supra, 454 F.3d at 1054 (*citing* Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993)). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion. Stout, supra, 454 F.3d at 1054-55 (reviewing legal errors found to be harmless).

DISCUSSION

1. The ALJ erroneously found that plaintiff's fibromyalgia and chronic pain syndrome were not severe impairments and failed to evaluate properly the opinions by treating physician Dr. Greg Carter, M.D. ("Dr. Carter").

Step-two of the administration's evaluation process requires the ALJ to determine whether or not the claimant "has a medically severe impairment or combination of impairments." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). The Administrative Law Judge "must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." Smolen, supra, 80 F.3d at 1290 (citations omitted). The "step-two determination of whether a disability

is severe is merely a threshold determination of whether the claimant is able to perform his past work." Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).

An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities are "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" Smolen, supra, 80 F.3d at 1290 (*quoting* Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting* Social Security Ruling "SSR" 85-28)). The step-two analysis is "a *de minimis* screening device to dispose of groundless claims." Smolen, supra, 80 F.3d at 1290 (*citing* Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987)).

According to Social Security Ruling 96-3b, "[a] determination that an individual's impairment(s) is not severe requires a careful evaluation of the medical findings that describe the impairment(s) (*i.e.*, the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairments(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." SSR 96-3p, 1996 SSR LEXIS 10 at *4-*5 (*citing* SSR

96-7p); see also Slayman v. Astrue, 2009 U.S. Dist. LEXIS 125323 at *33-*34 (W.D. Wa. 2009). If a claimant's impairments are "not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity." Bowen, supra, 482 U.S. at 146. Plaintiff bears the burden to establish by a preponderance of the evidence the existence of a severe impairment that prevented performance of substantial gainful activity and that this impairment lasted for at least twelve continuous months. 20 C.F.R. §§ 404.1505(a), 404.1512, 416.905, 416.1453(a), 416.912(a); Bowen, supra, 482 U.S. at 146; see also Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998) (*citing* Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995)). It is the claimant's burden to "'furnish[] such medical and other evidence of the existence thereof as the Secretary may require.'" Bowen, 482 U.S. at 146 (*quoting* 42 U.S.C. § 423(d)(5)(A)) (*citing* Mathews v. Eldridge, 424 U.S. 319, 336 (1976)); see also McCullen v. Apfel, 2000 U.S. Dist. LEXIS 19994 at *21 (E.D. Penn. 2000) (*citing* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.1505, 404.1520).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (*citing* Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31 (*citing* Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and

thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick, supra, 157 F.3d at 725 (*citing* Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). However, the ALJ "need not discuss *all* evidence presented." Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam). The ALJ must only explain why "significant probative evidence has been rejected." Id. (*quoting* Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981)).

In general, more weight is given to a treating medical source's opinion than to the opinions of those who do not treat the claimant. Lester, supra, 81 F.3d at 830 (*citing* Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). "A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." Edlund v. Massanari, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); see also 20 C.F.R. § 416.902 (non-treating physician is one without "ongoing treatment relationship").

In this matter, the ALJ implicitly found that plaintiff's chronic pain syndrome was not a severe impairment as he failed to discuss said impairment (see Tr. 13). The ALJ explicitly found that plaintiff's alleged fibromyalgia was a "non-medically determinable impairment" (id.). In making this finding, the ALJ noted that Dr. Carter observed that plaintiff had "most of the American College of Rheumatology trigger points," however found that this assessment did not support Dr. Carter's diagnosis of fibromyalgia because

the ALJ found that Dr. Carter did not indicate which trigger points plaintiff had, nor how many she had (id. *citing* Tr. 241).

On June 27, 2007, Dr. Carter examined plaintiff and observed trigger points "in "the trapezius muscles, rhomboideus muscles and sternocleidomastoid muscles" (Tr. 246). On April 25, 2008, Dr. Carter examined plaintiff and although he did not specify which trigger points she had on this occasion, he noted his objective observation that she had "most" of them (Tr. 241). On January 29, 2009, Dr. Carter examined plaintiff and observed that plaintiff had "trigger points throughout the upper back and neck," and that there were notable "trigger points in the rhomboideus muscles bilaterally" (Tr. 236). Based on the relevant record, the Court concludes that the ALJ's finding that Dr. Carter's assessment that plaintiff had "most of the American College of Rheumatology trigger points," didn't support Dr. Carter's diagnosis of fibromyalgia because of a lack of specificity regarding plaintiff's trigger points is not supported by substantial evidence in the record as a whole. See Magallanes, supra, 881 F.2d at 750.

The ALJ also failed to note that although the myofascial therapy was helping plaintiff obtain some relief, treatment reports relied on by the ALJ indicate that plaintiff still "was left with ongoing constant aching and nagging pain" (see Exhibit 8F, p. 7, i.e., Tr. 242). According to treatment notes from Dr. Joseph F. Jasper, M.D. ("Dr. Jasper"), whose opinions the ALJ relies on, plaintiff's pain had been "up and down," and increased four weeks after her injection procedure (Tr. 229; see also Tr. 249).

The ALJ also relies on his assessment that plaintiff's treatment focused on myofascial symptoms in order to support his finding that plaintiff's fibromyalgia was not

a severe medically determinable impairment (see Tr. 13). However, the ALJ fails to recognize that the myofascial release therapy was prescribed as a treatment for her fibromyalgia by Dr. Carter (see Tr. 241).

In addition, although the ALJ relies on the lack of fibromyalgia diagnoses by Dr. Jasper and Dr. Kevin Caserta, M.D. ("Dr. Caserta"), there is no evidence that either one of these physicians opined that plaintiff did not have fibromyalgia or that either one of them assessed that she was negative for the presence of trigger points (see Tr. 221-35, 236-67).

The existence of a medically determinable impairment requires more than plaintiff's subjective symptoms, such as signs "shown by medically acceptable clinical diagnostic techniques" and diagnoses. See 20 C.F.R. §§ 404.1528(b); 416.928(b). For an impairment to be severe, it must have more than a minimal effect on a claimant's ability to conduct basic work activities. See 20 C.F.R. §§ 404.1521(a), 416.921(a). Here, Dr. Carter examined plaintiff and objectively observed that plaintiff had "most of the American College of Rheumatology trigger points" (Tr. 241). Dr. Carter also observed following examination of plaintiff that she had "profound muscle spasm in the upper back and neck" (Tr. 238). He diagnosed fibromyalgia (236, 238, 241). Dr. Carter opined that plaintiff was not capable of sedentary, light or medium work on a regular and sustained basis (Tr. 196). He also opined that full time work likely would have resulted in absenteeism of three or more days per month, based on the combination of plaintiff's medical impairments (Tr. 197).

Based on the reasons discussed and the relevant record, the Court concludes that the ALJ's failure to find that plaintiff's fibromyalgia and chronic pain syndrome were severe impairments is not supported by substantial evidence in the record as a whole. See Hoopai, supra, 499 F.3d at 1076; Smolen, supra, 80 F.3d at 1290. In addition, plaintiff's diagnosis of chronic pain syndrome is significant, probative evidence that should have been discussed and the ALJ's failure to do so is legal error. See Vincent, supra, 739 F.2d at 1394-95.

The ALJ's failure to find that plaintiff's fibromyalgia and chronic pain syndrome were severe impairments calls into question the ALJ's evaluation of the medical evidence as well as his determination regarding plaintiff's residual functional capacity. The ALJ interprets the medical evidence as demonstrating that even if plaintiff's fibromyalgia was "medically determinable and considered severe, it would not affect her capacity any more than her myofascial pain syndrome has in defining her residual functional capacity" (Tr. 13). However, this interpretation does not appear to have been put forth by any of the treating, examining or reviewing physicians of record, nor by any testifying medical expert (see Tr. 19-39). Based on this reason and the relevant record, the Court finds that this finding by the ALJ is not supported by substantial evidence in the record. See Magallanes, supra, 881 F.2d at 750. For this reason and based on the relevant record, plaintiff's residual functional capacity should be assessed anew following remand of this matter.

The Court already has concluded that the ALJ failed to evaluate properly Dr. Carter's opinion regarding plaintiff's impairments of fibromyalgia and chronic pain

syndrome. In addition, the ALJ assigned less weight to Dr. Carter's opinions because he found that Dr. Carter's opinions were not supported by his own findings or the evidence as a whole, and that he had not substantiated his assessment with references to other objective medical evidence (Tr. 16). The Court concludes that the ALJ failed to provide specific and legitimate reasons to discount Dr. Carter's opinions and thereby failed to evaluate properly the medical evidence. See Lester, supra, 81 F.3d at 830-31.

First, the ALJ did not specify which of Dr. Carter's "own findings" failed to support his opinions regarding plaintiff's limitations (see Tr. 16). The ALJ also failed to specify what evidence from "the evidence as a whole" failed to support Dr. Carter's opinions (see id.). In addition, based on the relevant record, the Court concludes that Dr. Carter's findings are consistent with his treatment records and are consistent with the record as a whole. These reasons for the ALJ's decision to disregard Dr. Carter's opinions are neither specific, nor legitimate. See Lester, supra, 81 F.3d at 830-31.

Finally, the ALJ's reliance on his finding that Dr. Carter did not substantiate his assessment with objective evidence is flawed in two respects. First, Dr. Carter substantiated his diagnosis of fibromyalgia with objective observation, on multiple occasions, of plaintiff's positive trigger points (see Tr. 236, 241, 246). The second flaw in the ALJ's reasoning is demonstrated by a discussion by the Seventh Circuit in a similar case:

> There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and - - the only symptoms that discriminates between it and other diseases of a rheumatic character - - multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the

> patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch. There is no serious doubt that [the claimant] is afflicted with the disease but it is difficult to determine the severity of her condition because of the unavailability of objective clinical tests.

Sarchet v. Chater, 78 F.3d 305, 306-07 (7th Cir. 1996).

The difficulty presented by attempts to analyze the severity of fibromyalgia also was discussed by the Ninth Circuit in Benecke. See Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004). In that case, the Ninth Circuit included the following discussion:

> [T]he ALJ erred in discounting the opinions of [the claimant]'s treating physicians, relying on his disbelief of [the claimant]'s symptom testimony as well as his misunderstanding of fibromyalgia. The ALJ erred by 'effectively requiring 'objective' evidence for a disease that eludes such measurement.' Green-Younger v. Barnhart, 335 F.3d 99, 108 (2d Cir. 2003) (reversing and remanding for an award of benefits where the claimant was disabled by fibromyalgia). . . . . Sheer disbelief is no substitute for substantial evidence.

Id.

Due to the nature of this impairment, it is especially important for the ALJ to credit appropriately the judgment of medical professionals and specialists. Dr. Carter treated plaintiff from at least 2004 through 2009, while Drs. Jasper and Caserta treated plaintiff only during 2007 (see Tr. 236-63). See also 20 C.F.R. § 404.1527(d)(2)(i) (when considering medical opinion evidence, the Commissioner will consider the length and extent of the treatment relationship). Dr. Carter examined plaintiff, observed trigger points, diagnosed fibromyalgia and assessed limitations on plaintiff's ability to function which call into question the ALJ's finding that plaintiff was not disabled pursuant to the

Social Security Act (see Tr. 196, 197, 236, 241, 246). Drs. Jasper and Caserta did not opine that plaintiff did not suffer from fibromyalgia and neither one of them found that plaintiff was exhibiting any negative examination results on trigger points (see e.g., Tr. 244). For these reasons, as well as the reasons already discussed herein, and based on the relevant record, the Court concludes that the ALJ failed to evaluate properly the opinions of Dr. Carter. The ALJ did not provide specific legitimate reasons supported by substantial evidence in the record for his decision to give less weight to the opinions of Dr. Carter. See Lester, supra, 81 F.3d at 830-31.

   2.  Plaintiff's credibility should be assessed anew following remand.

The medical evidence is considered when assessing a claimant's credibility and determining the intensity and persistence of plaintiff's symptoms. See 20 C.F.R. § 404.1529(c). A claimant's symptoms are considered after the determination is made that a claimant has a medically determinable impairment. See id. In this matter, the Court already has determined that the ALJ's conclusion that plaintiff's fibromyalgia was not a medically determinable impairment was not proper, see supra, section 1. The Court also already has found that the ALJ erroneously failed to discuss plaintiff's diagnosis of chronic pain syndrome. The symptoms suffered by plaintiff due to these impairments were not considered appropriately by the ALJ due to his errors in the assessment of the medical evidence. For these reasons and based on the relevant record, the Court concludes that plaintiff's credibility and her testimony regarding her symptoms must be evaluated anew following remand.

1    3. <u>The new evidence should be assessed following remand</u>.

Plaintiff submitted new evidence to the Appeal Council, including a third report from plaintiff's treating physician, Dr. Carter, and a lay statement from plaintiff's husband (<u>see</u> Opening Brief, pp. 5-10). Because this new evidence is material and because the Court already has concluded that this matter should be reversed and remanded to the Commissioner for further administrative proceedings, the new evidence should be considered following remand.

CONCLUSION

The ALJ failed to evaluate properly the medical evidence provided by plaintiff's treating physician, Dr. Carter. He also committed legal error in the evaluation of plaintiff's fibromyalgia and chronic pain syndrome.

Based on these reasons and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** to the administration for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. <u>See also</u> Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. <u>See</u> 28 U.S.C. § 636(b)(1)(C).

Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on February 3, 2012, as noted in the caption.

Dated this 11th day of January, 2012.

J. Richard Creatura
United States Magistrate Judge